UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHABBIR CHOUDHURY, individually and on behalf
of others similarly situated,

   Plaintiff,

   -against-

TOTAL MERCHANT SERVICES, INC.,

   Defendant,

_____/

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF
THE TELEPHONE CONSUMER
PROTECTION ACT**

**Docket No**.: 17cv6186
Jury Trial Demanded

1.   Robo-calls are the #1 consumer complaint in the United States today.

2.   In 2016, there were 3,857,627 robo-call complaints reported to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC).[1] That is a dramatic increase from the 2,636,477 and 1,949,603 robocall complaints reported in 2015 and 2014, respectively.

3.   In New York, there were 362,390 robo-call complaints reported in 2016.[2]

4.   "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 – September 30, 2016*, FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf
[2] *Id.*

telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

5. Plaintiff, Shabbir Choudhury, alleges Defendant, Total Merchant Services, Inc., robocalled him three (3) times in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

6. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7. The purpose of the TCPA is to prevent companies like Defendant from invading American citizens' privacy and prevent illegal robo-calls.

8. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9.    Per findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## PARTIES IN THE COMPLAINT

10.   Plaintiff Shabbir Choudhury (hereinafter "Plaintiff") is a natural person who resides at 88-28 202nd Street, Hollis, NY 11423.

11.   Plaintiff is a "person" as defined by the TCPA, 47 U.S.C. § 153(39), and a subscriber to cellular telephone services within the United States.

12.   Defendant Total Merchant Services, Inc. is a financial services company headquartered in California, with a primary mailing address at 21650 Oxnard St, #1200, Woodland Hills, CA 91367-7814.

13.   Defendant persistently utilized an "Automatic Telephone Dialer", as defined in 47 U.S.C. § 227(a)(1), to call the Plaintiff's cellular telephone, violating the Plaintiff's privacy rights afforded under federal law.

## JURISDICTION

14.   Jurisdiction of this Court arises under 28 U.S.C. § 1331, 47 U.S.C. § 227, and pursuant to 28 U.S.C. § 1367 for pendent state law claims, which are predicated upon the same facts and circumstances that give rise to the federal causes of action. Injunctive relief is available pursuant to the TCPA.

15.     This action arises out of the Defendant's repeated violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.,* in their efforts to collect an alleged consumer debt.

16.     Venue is proper in this District because the Plaintiff may be found in this District, and some of the acts and transactions occurred in this District, and because Plaintiff received multiple collection communications from and on behalf of the Defendant while in New York on the cellular telephone that is the subject of this litigation.

## ALLEGATIONS FOR CLASS ACTION

17.     Plaintiff brings this action as a class action, pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of himself and all persons/consumers, along with their successors-in-interest, who have received similar communications from Defendant which, as alleged herein, are in violation of the TCPA, as of the date of Plaintiff's Complaint (the "Class"). Excluded from the Class is Defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with the Defendant, including, without limitation, persons who are officers, directors, employees, associates or partners of Defendant. Upon information and belief, hundreds of persons have received similar communications from the Defendant which violate provisions of the TCPA.

18.     This Class satisfies all the requirements of FRCP Rule 23 for maintaining a class action.

19.     The Class is so numerous that joinder of all members is impracticable. Upon information and belief, hundreds of persons have received communications from the Defendant, which violates various provisions of the TCPA.

20.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions of law

and fact include, without limitation: (i) Whether Defendant violated various provisions of the TCPA; (ii) Whether Plaintiff and the Class have been injured by Defendant's conduct; (iii) Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of the Defendant's wrongdoing and, if so, what the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and, (iv) Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

21.     Plaintiff's claims are typical of the claims of the Class and Plaintiff has no interests adverse or antagonistic to the interests of other members of the Class.

22.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, this being specifically envisioned by Congress as a principal means of enforcing the TCPA, as codified by 47 U.S.C. §227.

23.     The members of the Class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

24.     Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties.

25.     A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

26.   Plaintiff will fairly and adequately represent the Class members interest, in that the Plaintiff's counsel is experienced and, further, anticipates no impediments in the pursuit and maintenance of the class action as sought herein.

27.   Absent a class action, the Class members will continue to suffer losses borne from Defendant's breaches of their statutorily protected rights as well as monetary damages, thus allowing and enabling: (a) Defendant's conduct to proceed and; (b) Defendant to further enjoy the benefit of its ill-gotten gains.

28.   Defendant has acted, and will act, on grounds generally applicable to the entire Class, thereby making appropriate a final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

29.   Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs number ("1 through 28") herein with the same force and effect as if the same were set forth at length herein.

30.   Plaintiff asked that he not be called by automated dialers, but these unauthorized telemarketing calls did not cease.

31.   On April 14, 2017, Defendant began communicating with Plaintiff by means of telephone calls to Plaintiff's cellphone number (347) 907-5841.

32.   On April 14, 2017, the Plaintiff answered the Defendant's phone call and received a pre-recorded telemarketing call from the Defendant.

33.   On August 29, 2017, the Plaintiff once again answered the Defendant's phone call.

34.   The Plaintiff stated "Hello" and almost immediately began a pre-recorded telemarketing message by the Defendant offering their services.

6

35.   On October 6, 2017, the Plaintiff once again answered the Defendant's phone call.

36.   The Plaintiff stated "Hello" and almost immediately began a pre-recorded telemarketing message by the Defendant offering their services. The Plaintiff also stated, "Stop calling me with these robo-calls please."

37.   The Defendant and its agents continued to repeatedly use an automatic telephone dialing system to make unauthorized telemarketing calls to the Plaintiff's cellphone, at least three (3) times prior to the commencement of this litigation (See Exhibit A Call Logs).

38.   The Defendant voluntarily and willfully used an auto dialer to place these unauthorized telemarketing calls.

39.   At no time did the Plaintiff ever give consent for the Defendant to use an auto dialer to place these unauthorized telemarketing calls.

## TELEPHONE CONSUMER PROTECTION ACT

40.   Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs number ("1 through 39") herein with the same force and effect as if the same were set forth at length herein.

41.   In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

42.   The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

43.   Under the TCPA, the burden is on defendants to demonstrate prior express consent.

7

44.    At all times relevant to this complaint, the Plaintiff was and is a "person" as defined by the TCPA, 47 U.S.C. § 153(39), and a subscriber to cellular telephone services within the United States.

45.    At all times relevant to this complaint, the Defendants have used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1).

46.    The Federal Communications Commission (FCC) was given the authority to issue orders implementing the TCPA. The FCC has issued an order that states:

> The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. **Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.**

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (F.C.C. 2007), paragraph 10. (Footnotes omitted, bold emphasis added.)

47.    The Second Circuit's more recent decision in *Giovanniello v. ALM Media*, LLC, 726 F.3d 107 (2d Cir. 2013), recognized that prior interpretation of §227(b)(3) as giving state courts the authority to set the terms of TCPA claims no longer held true.  Based on those precedents, the court held that Federal Rule of Civil Procedure 23, not state law, governs when a federal TCPA suit may proceed as a class action.  The Second Circuit noted that Mims triggered a fundamental shift in the way that the court views Section 227(b)(3)'s "if otherwise permitted" language, and "uprooted much of our TCPA jurisprudence."

Ultimately, the court found that Federal Rule of Civil Procedure 23 now governs TCPA class actions in Federal Courts.

48. Within the months immediately preceding the filing of this lawsuit, Defendant and its agents telephoned the Plaintiff's cellular telephone number on numerous occasions in violation of the TCPA.

49. Without Plaintiff's prior express consent, Defendant and its collectors and agents repeatedly used an automatic telephone dialing system to make unauthorized telemarketing calls to the Plaintiff's cellular telephone, at least three (3) times prior to the commencement of this litigation.

50. Oftentimes these phone calls would simply be an automatic message offering the Defendant's services to the Plaintiff.

51. The frequency of these calls also greatly impacted the Plaintiff's home and work life as well.

52. Plaintiff also began to suffer from extreme stress and physical hardship as a result of the frequency of the calls and his inability to deal with the Defendant in any constructive way.

53. These hardships, caused by the Defendant, directly harmed the Plaintiff's ability to work and earn money, deal with his family, and otherwise lead a healthy and productive life.

54. Throughout this time the Defendant was on specific notice that the phone was a cell phone and that the Plaintiff was specifically requesting that they not call him at that number, making these automated calls to Plaintiff willful.

55. All calls and messages were sent in willful violation of the TCPA because Defendant never obtained the Plaintiff's prior express consent, and had no basis to believe that they had the

Plaintiff's prior express consent to make automated calls to his cell phone or to send him prerecorded and/or synthesized messages on his cell phone.

*Summary*

56. All of the above-described collection communications made to Plaintiff by Defendants and other collection employees employed by Defendant, were an invasion of his privacy by the use of repeated calls.

57. According to findings by the FCC, automated calls are prohibited because, as Congress found, such calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

58. The United States Supreme Court has recognized a citizen's home as "the last citadel of the tired, the weary, and the sick," *Gregory v. Chicago*, 394 U.S. 111, 125 (1969), and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value." *Carey v. Brown,* 447 U.S. 455, 471(1980).

59. The Defendant's persistent autodialed calls eliminated the Plaintiff's right to be left alone.

60. These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had.

61. Defendant's actions constituted the unauthorized use of, and interference with the Plaintiff's cellular telephone service for number which the Plaintiff paid money.

62. Plaintiff was charged money for each call that Defendant made to Plaintiff's cellular phone.

## TCPA AUTODIALERS

63.     The TCPA further provides that "[t]he term 'automatic telephone dialing system' means equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." (47 U.S.C. § 227(a)(1)).

64.     The FCC has interpreted an autodialing telephone dialing system as follows:

Under the TCPA, the term "automatic telephone dialing system" or "autodialer" is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." . . . § 227(a)(1). *The Commission has emphasized that this definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists.* See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092, para. 133 (2003) (2003 TCPA Order). The Commission has, for example, concluded that the scope of that definition encompasses "hardware [that], when paired with certain software, *has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers*," in light of, among other things, its conclusion that "the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." Id. at 14091-93, paras. 131, 133.

*Soundbite TCPA Ruling*, 15 FCC Rcd. 15391 at ¶ 2, n.5 (emphasis added.)

## CAUSE OF ACTION
### FIRST COUNT
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

65. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

66. The foregoing acts and omissions of Total Merchant Services, Inc. constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

67. As a result of Total Merchant Services, Inc.'s knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

68. Plaintiff is also entitled to and does seek injunctive relief prohibiting such conduct violating the TCPA by Total Merchant Services, Inc. in the future.

69. Plaintiff is also entitled to an award of attorneys' fees and costs.

### SECOND COUNT
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

70. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

71. The foregoing acts and omissions of Total Merchant Services, Inc. constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

72.     As a result of Total Merchant Services, Inc.'s violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

73.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Total Merchant Services, Inc.'s violations of the TCPA in the future.

74.     Plaintiff is also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the members of the Class, prays for judgment against Defendant as follows:

A.  Certification of the proposed Class;

B.  Appointment of Plaintiff as representative of the Class;

C.  Appointment of the undersigned counsel as counsel for the Class;

D.  A declaration that Defendant and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.  An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.  An award to Plaintiff and the Class of damages, as allowed by law;

G.  An award to Plaintiff and the Class of attorneys' fees and costs, as allowed by law and/or equity;

H.  Leave to amend this Complaint to conform to the evidence presented at trial; and

I.  Orders granting such other and further relief as the Court deems necessary, just, and proper.

Dated: October 23, 2017

Respectfully submitted,

__s/Subhan Tariq_____
Subhan Tariq, Esq.
Attorney I.D. No. ST9597
The Tariq Law Firm, PLLC
9052 171st Street
Jamaica Estates, NY 11432
Telephone: (516) 900-4529
Facsimile: (516) 453-0490
Email: subhan@tariqlaw.com
**Attorney for Plaintiff**

To:

    Total Merchant Services, Inc.
    21650 Oxnard St, #1200
    Woodland Hills, CA 91367-7814

    (via Prescribed service)

    Clerk of the Court,
    United States District Court
    Eastern District of New York
    225 Cadman Plaza East
    Brooklyn, NY 11201

    (For Filing purposes)